567 S.E.2d 671

**BLACK'S AUTO REPAIR AND TOW-ING, INC., and Michael Muncy, Pe-titioners Below, Appellants,**

v.

**MONONGALIA COUNTY MAGISTRATE COURT, Respondent Below,**

**Rose Marie Walsh and Anthony Dupree Johnson, Respondents Below, Appellees.**

No. 30126.

Supreme Court of Appeals of West Virginia.

Submitted May 21, 2002.

Decided July 2, 2002.

Paul Michael Muncy, Pursglove, Pro se.

Rose Marie Walsh, Westover, Pro se.

Anthony Dupree Johnson, Westover, Pro se.

STARCHER, Justice.

This is a *pro se* appeal from a default judgment, taken in the magistrate court against the appellant, his company, and an employee, when the appellant was incarcerated in a county jail. The circuit court affirmed the default judgment. It is from that judgment by the circuit court that the appellant appeals; we reverse the circuit court's

judgment and remand the case for further proceedings.

## I.

### Facts & Background

The appellant, Paul M. Muncy, appeals an order by the Circuit Court of Monongalia County dated November 9, 2000, denying Mr. Muncy's petition for a late appeal of a magistrate court's default judgment against Mr. Muncy, his business, and his co-defendant, Homer Wilson, Jr.

The appellant is the owner of Black's Auto Repair & Towing, Inc. ("Black's"), a corporation operating a garage and towing business in Monongalia County. Homer Wilson, Jr. performed mechanical work for Black's.

In August of 1998, the appellee, Anthony Johnson, delivered a 1988 Cadillac Coupe DeVille belonging to the appellees/plaintiffs, Rose Marie Walsh and Anthony Johnson, to Black's for repairs. The Cadillac had engine problems.[1] Mr. Wilson removed the original engine and power train, and he installed a used engine for the Cadillac; unfortunately, the replacement engine was apparently defective, and additional repairs were required. The appellees claim that Homer Wilson, Jr. failed to repair the Cadillac in a diligent manner. More specifically, the car apparently sat at Black's, in pieces and unrepaired, for approximately eighteen months.

In February of 2000, Mr. Muncy was jailed for allegedly failing to meet his child support obligations; he was released from jail in May of 2000. While Mr. Muncy was jailed, Mr. Wilson allegedly assumed the duties of manager of Black's. On February 16, 2000, the appellees filed suit in the Magistrate Court of Monongalia County against Mr. Muncy, Black's, and Mr. Wilson, claiming that the defendants wrongfully refused to fix and/or return the car in the working condition in which it was allegedly received.

Mr. Muncy concedes that he was personally served with the appellees' complaint while he was in jail. Mr. Muncy says that he "hand drafted an answer and placed the same in the hands of Mr. Homer Wilson, Jr. to be returned to the court as an answer, and that Mr. Wilson failed to answer the complaint on his own behalf or with the answer for the corporation or of Mr. Muncy." The magistrate court also had a copy of the complaint served on the Secretary of State, who mailed it to the listed registered agent for Black's; this agent, however, was apparently not in contact with Mr. Muncy. Mr. Wilson was apparently personally served.

On April 24, 2000, because no answer to the complaint had been filed, a magistrate entered a default judgment against Mr. Muncy and the other defendants for $4,550.00, plus $105.00 court costs.[2] When Mr. Muncy was released from jail on May 8, 2000, he attempted to appeal the default judgment to the circuit court. The magistrate required a $4,550.00 bond to stay the execution of the magistrate's order, but Mr. Muncy could not obtain the funds. Mr. Muncy's two tow trucks were seized by the Monongalia County Sheriff to satisfy the judgment. Mr. Muncy filed a motion with the circuit court to allow a late-filed appeal of the default judgment. The circuit court denied the motion.

## II.

### Standard of Review

The deciding issue before this Court is whether a default judgment may be entered against a person incarcerated in jail who does not have a guardian *ad litem*. This is purely a matter of law that we address *de novo*. *See* Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

### Discussion

The appellant argues that he, Black's, and Mr. Wilson were entitled to a trial on the merits of the case against them.

---

1. Because there was no trial below, there are no legally established facts regarding the dispute that led to the default judgment below, and our discussion simply relates the apparent facts as asserted in the pleadings in this Court.

2. This amount was the alleged value of the Cadillac.

"[C]ourts look with disfavor on judgments obtained by default. 'The law strongly favors an opportunity to a defendant to make defense to an action against him.'" *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 376, 175 S.E.2d 452, 456 (1970).

> In determining whether a default judgment should be entered in the face of a rule 6(b) motion or vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party.

Syllabus Point 2, *Jackson General Hosp. v. Davis,* 195 W.Va. 74, 464 S.E.2d 593 (1995) (citations omitted).

An analysis of these factors suggests that the default judgment should be reversed and this matter remanded. The degree of prejudice suffered by Mr. Muncy was significant. The judgment resulted in the seizure of both of Mr. Muncy's tow trucks. Without these trucks, Mr. Muncy is unable to operate his garage service. There are genuine issues of material fact regarding the repairs to the car. Furthermore, Mr. Muncy was clearly not intransigent regarding his appearance in court; he was incapable of fully responding to the complaint because of his incarceration. It is unclear whether the magistrate was aware of the fact that Mr. Muncy was absent from court due to his incarceration. These facts, taken together, suggest that the default judgment should have been set aside.

A more important underlying issue is raised by the fact that the complaint was served on Mr. Muncy while he was in jail; and he was, it appears, therefore unable to adequately respond to and defend against the complaint, and as a consequence, a default judgment was entered.

*West Virginia Magistrate Court Rules of Civil Procedure,* Rule 10(d) [1991] ("default judgment") states in pertinent part:

> No default judgment may be entered against a party who is ... an *incarcerated convict* unless such person is represented by a guardian, committee resident, or guardian ad litem.

(Emphasis added.)

A counterpart to the magistrate court rule for the circuit courts is found in *West Virginia Rules of Civil Procedure,* Rule 55(b)(2) [1998] ("Default"), which states (in pertinent part):

> ... no judgment by default shall be entered against an infant, incompetent person, or *convict* unless represented in the action by a guardian, guardian ad litem, committee, conservator, curator or other representative who has appeared therein....

(Emphasis added.)

The basis for these rules of procedure is, in part, certain statutes, to-wit: *W.Va.Code,* 50–4–10 [1997] (magistrate courts—"Default Judgment; confession of judgment");[3] *W.Va.Code,* 50–5–3 (1978) (magistrate courts—"Appointment of guardian ad litem");[4] and *W.Va.Code,* 28–5–33 [1982] ("Appointment of committee of convict; bond") and *W.Va.Code,* 28–5–36 [1923] ("Suits by or against convict or commit-

---

**3.** *W.Va.Code,* 50–4–10 [1997] states in pertinent part:

> ... (2)(A) No judgment by default shall be rendered [in magistrate court] against a person who is an infant, incompetent person or incarcerated convict unless such person is represented in the action by a guardian ad litem, guardian, committee, curator or other like fiduciary.

**4.** *W.Va.Code,* 50–5–3 [1978] states:

> No infant, incompetent person or incarcerated convict shall proceed or be proceeded against the [sic] civil action in magistrate court unless the provisions of this section are complied with.

> Whenever an infant, incompetent person or incarcerated convict has a duly qualified representative, such as a guardian, curator, committee or other like fiduciary, such representative may sue or defend on behalf of the infant, incompetent person or convict. If a person under any disability does not have a duly qualified representative he may sue by his next friend. The magistrate shall appoint some suitable person who shall not be required to be an attorney-at-law as guardian ad litem for an infant, incompetent person or incarcerated convict not otherwise represented in an action.

tee");[5] all of which deal with how certain legal affairs of "convicts," who are defined by statute as persons who are serving a penitentiary sentence of a year or more, *W.Va.Code*, 28-5-33 [1982] (at n. 5 *infra*), are to be managed.

The historic premise of these statutes and related rules of procedure[6] is the principle that a person imprisoned for a felony (as opposed to an incarcerated pre-trial detainee or misdemeanant) suffers a "civil death" or "civil disability."[7] That is, under this principle, as a result of the person's felony incarceration status, the person has a status-based legal disability similar to that of an infant or incompetent.

However, we have recognized that modern principles of due process and access to the

5. *W.Va.Code*, 28-5-33 [1982] states:

*When a person is confined in the penitentiary of this or any other state, or of the United States, under sentence for one year or more, or to suffer death, the estate of such convict in this state, if he have any, both real or personal, shall on the motion of any party interested, be committed by the county commission of the county in which his estate or some part thereof may be, to a person selected by such county commission, who after giving bond before the county commission in such penalty as it may prescribe, shall have charge and management of such estate until the convict is discharged from confinement or dies; and upon such motion the county commission shall appoint said committee, although the convict has no estate, either real or personal, located in this state. In the event said convict has no such estate, or his estate does not exceed one thousand dollars, reference to a fiduciary commissioner shall not be necessary....*

(Emphasis added.)

*W.Va.Code*, 28-5-36 [1923] states:

Such committee may sue and be sued in respect to debts due to or from such convict, and respecting all other causes of action for which the convict might sue or be sued had no such incarceration taken place, and shall have the privilege of an administrator as to the right of retaining his own debt. No action or suit shall be instituted by or against such convict after he is incarcerated, and all actions or suits to which he is a party at the time of his incarceration shall abate, and continue so until revived by or against the committee, whose duty it shall be to prosecute or defend, as the case may be. Any judgment recovered against such committee shall be a lien upon the lands of the convict to the same extent as if recovered against the convict before the conviction. But the plaintiff in any action, suit or proceeding against the committee of a convict shall not be examined as a witness in his own behalf in such action, suit or proceeding in respect to any transaction or communication had personally with the convict, unless such committee shall be examined as a witness in his own behalf in respect to such transaction or communication, or such convict personally testifies, or his testimony in respect to such transaction or communication is given in evidence.

6. *W.Va. Rules of Civil Procedure*, Rule 17(c) [1998] states:

Whenever an infant, incompetent person, or convict had a representative, such as a general guardian, curator, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant, incompetent person, or convict. An infant, incompetent person, or convict who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court or clerk shall appoint a discreet and competent attorney at law as guardian ad litem for an infant, incompetent person, or convict not otherwise represented in an action, or shall make such other order as it deems proper for the protection of the infant, incompetent person, or convict. A guardian ad litem is deemed a party for purposes of service; failure to serve a guardian ad litem is deemed a party for purposes of service; failure to serve a guardian ad litem in circumstances where service upon a party is required constitutes failure to serve a party.

7. "The definition of 'convict' or 'conviction' is one that has plagued the courts in many different circumstances. At common law, the label carried with it consequences such as corruption of blood and civil death." [Citations omitted] *Ky. County Judge/Executive Ass'n, v. Com.*, 938 S.W.2d 582, 583, n. 1 (Ky.App.1996). "Civil Death: At common law, the loss of rights—such as the right to vote, make contracts, inherit, and sue—by a person who has been outlawed or convicted of a serious crime[.]..." Black's Law Dictionary 238 (7th ed.1999). "Civil Disability: The condition of a person who has had a legal right or privilege revoked as a result of a criminal conviction[.]..." Black's Law Dictionary 474 (7th ed.1999). In addition to the statutes cited herein, our brief research indicates that there are a number of other West Virginia statutes pertaining to the legal status of and legal proceedings regarding "convicts" and our holding herein is not intended to make any determination with respect to such statutes. Likewise, while we see no reason why the principles that underlie our holding regarding default judgments in the instant case should not apply to other situations where the legal status, rights, and protections of incarcerated persons are at issue, our holding herein is limited to the issue of default judgments.

courts that apply to *all* incarcerated persons can modify these older principles. For example, in *Craigo v. Marshall*, 175 W.Va. 72, 331 S.E.2d 510 (1985), we allowed an incarcerated felon to file a lawsuit without a committee or guardian *ad litem*, also recognizing that if a valid waiver was present, an incarcerated felon could be sued while incarcerated—in both cases, despite his "civil death." We held in *Craigo* that, "In the absence of an express written waiver of his right to a committee under *W.Va.Code* 28–5–36, or a guardian *ad litem* under Rule 17(c) of the *West Virginia Rules of Civil Procedure*, a suit cannot be directly maintained against a prisoner." Syllabus Point 2, *Craigo, supra.*

"The federal courts have held on due process and equal protection grounds that *prisoners* cannot be denied access to the courts." [Citations omitted] *Craigo v. Marshall*, 175 W.Va. at 74, 331 S.E.2d at 513 (emphasis added). We believe that in modern times, the legal boundaries applicable to incarcerated persons must be based on principles of due process, fairness, and adequate legal protection for *all* prisoners, not just incarcerated felons.

We note that the enactment of *W.Va.Code*, 31–20–1 *et seq.* established the process of closing county jails and replacing them with regional jails. The nature of the regional jail system makes it more difficult for an incarcerated person in jail to obtain counsel or otherwise respond to a legal action. Our former system, where the county jail was often across the street or attached to the courthouse, allowed an incarcerated person awaiting trial or serving a jail sentence a greater degree of access to the legal system than is the case with regional jails. In light of these changes in our correctional system, there is a need to assure that all incarcerated individuals have equal protection under the law to assure their rights of due process and access to the courts.

In Syllabus Point 2 of *Chandos, Inc. v. Samson et al.*, 150 W.Va. 428, 146 S.E.2d 837 (1966), this Court stated:

A valid default judgment under Rules 37(d) and 55(b)(2), R.C.P., cannot be entered against a defendant who is at the time of the entry of such judgment an ...

incarcerated convict, unless represented by a guardian *ad litem*, committee, curator, or other representative, and if a default judgment is entered against a defendant under such disability not properly represented it should be set aside upon proper motion.

█ "The purpose of an order appointing a guardian ad litem is to protect the person under disability." *Jackson, supra*, 195 W.Va. at 77, 464 S.E.2d at 596. With respect to default judgments, we believe that this "disability"-based protection must be extended to all incarcerated persons. We therefore hold that the term "convict" in Rule 55(b)(2) [1998] of the *West Virginia Rules of Civil Procedure* ("default"), and the term "incarcerated convict" in Rule 10(d) [1991] of the *West Virginia Rules of Civil Procedure for the Magistrate Courts* ("Default Judgment") and in *W.Va.Code*, 50–4–10(a)(2)(A) [1997] (magistrate court—"Default judgment; confession of judgment") must be read as meaning "incarcerated person."

█ While service on the other defendants in the instant case may have been technically sufficient, Mr. Muncy apparently had the responsibility for seeing that an answer to the complaint was filed by all of the defendants. Mr. Muncy's incarceration substantially hindered his ability to fulfill these responsibilities, leading to a default judgment against the other defendants.

Applying the foregoing principles, because Mr. Muncy was incarcerated at the time the default judgment was entered against him, and he did not have a guardian *ad litem*, guardian, committee, committee resident, curator, or other like fiduciary, as required by *W.Va.Code*, 55–4–10(2)(A) [1997] and *Magistrate Court Rules of Civil Procedure*, Rule 10(d), he is entitled to reversal of the default judgment against him personally. We also conclude that Mr. Muncy's relationship with Black's and Mr. Wilson was such that the default judgments against them should also be set aside.

## IV.

### Conclusion

The order of the circuit court affirming the magistrate court's award of default judgment

against Mr. Muncy, Black's, and Mr. Wilson is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.